IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

ELEISHA BREWSTER,                    )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )      Civil Action No.: 3:24-770
                                     )
BLOCK BY BLOCK,                      )
                                     )
                    Defendant.       )
                                     )

**EXHIBIT A**

**TO**

**NOTICE OF REMOVAL**

(Summons and Complaint)

# STATE OF NORTH CAROLINA

**Mecklenburg** County

*Name Of Plaintiff*
**Eleisha Brewster**

*Address*
**4934 GREENBrook DR**

*City, State, Zip*
**Charlotte NC 28205**

**VERSUS**

*Name Of Defendant(s)*
**Block BY Block**

File No. **24CV022528-590**

In The General Court Of Justice
☐ District ☐ Superior Court Division

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

---

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Block by Block<br>640 S. 4th St Unit 110<br>Louisville, KY 40202 | ~~CBTA~~<br>~~201 S. Tryon Street~~<br>~~Charlotte NC 28202~~ |

⚠️ **IMPORTANT! You have been sued!** These papers are legal documents, **DO NOT throw these papers out!** You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales. **¡NO TIRE estos papeles!**

Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>**4934 GREEN Brook DR**<br>**Charlotte NC 28205** | *Date Issued*<br>5/17/2024 | *Time*<br>**2:17** ☐ AM ☒ PM |
|---|---|---|
| | *Signature*<br>**Alexis Harper** | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

---

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

*Date Of Endorsement*

*Time* ☐ AM ☐ PM

*Signature*

☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court

---

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

(Over)
Original

FILED
DATE: May 17, 2024
TIME: 2:15:07 PM
MECKLENBURG COUNTY
CLERK OF SUPERIOR COURT
BY: A. Harper

**IN THE UNITED STATES DISTRICT COURT**
~~FOR WESTERN DISTRICT~~ OF NORTH CAROLINA

| | | |
|---|---|---|
| ELEISHA BREWSTER, | ) | |
| | ) | |
| Plaintiff, | ) | · **Civil Case No.** |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S COMPLAINT** |
| | ) | **FOR DAMAGES; AND JURY** |
| BLOCK BY BLOCK, | ) | **DEMAND** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff ELEISHA BREWSTER, (hereinafter "Plaintiff" or "Ms. Brewster"), *In Pro Se*,

hereby files this Complaint against Block by Block (hereinafter "Defendant" or "BBB") for

unlawful employment practices based on race discrimination (Black/African American),

disparate treatment, hostile work environment, harassment, and retaliation in violation of the

Title VII of the Civil Rights Act of 1964, as Amended, 42 U.S.C. §2000e, *et seq.* ("Title VII").

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this Complaint pursuant *to 28 U.S.C. §*

*1331,* as it asserts a claim that arises under laws of the United States, specifically Title VII, as

Amended, 42 U.S.C. §2000e, *et seq.*

2.     Venue is appropriate because all of the actions complained of are the result of

actions and the employment practices of Defendant, BBB, A Kentucky limited liability company

doing business in North Carolina as a Foreign Profit Corporation, pursuant to *28 U.S.C. § 1391.*

## EXHAUSTION OF REMEDIES

3.     Plaintiff has exhausted all her administrative remedies.

4. On or about February 16, 2024, Plaintiff submitted a Form 5 Charge of Discrimination with the Equal Employment Opportunity Commission-Charlotte, North Carolina District Office ("EEOC"), docketed as Charge No.430-2024-01714, in which she alleged that she was subjected to discrimination based on race (Black/African American), a hostile and harassing work environment, disparate treatment, and retaliation in violation of Title VII.

5. Plaintiff's claims were not investigated by the EEOC; but instead the EEOC issued Plaintiff a Determination and Notice of Rights ("DNR") letter on February 27, 2024. **Exhibit A: DNR dated 2/27/24.** Thus, Plaintiff's complaint is timely filed within 90 days after the issuance of the DNR.

**PARTIES**

6. Plaintiff is a resident of the Charlotte, North Carolina, and a United States citizen.

7. Defendant BBB is a Kentucky limited liability company registered as a foreign corporation and doing business in the State of North Carolina, whose principal place of business is 201 Tryon Street, Charlotte, N.C. 28202.

**FACTUAL BACKGROUND**

8. Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

9. At all times relevant, was hired by BBB as an Operations Manager on February 3, 2020, in North Carolina.

10. At all times relevant, Plaintiff was unlawfully terminated on December 1, 2023.

11. At all times relevant, Plaintiff was earning $80,000 per year at the time of her termination, along with other benefits including but not limited to vacation time, sick time and retirement benefits.

2

12.     At all times relevant, Plaintiff is a Black/African American female.

13.     At all times relevant, Plaintiff's first-line supervisor was Carin Cardone ("Ms. Cardone")(Caucasian female), Division Vice President of BBB.

14.     At all times relevant, Plaintiff's second-line supervisor was Anthony Boone ("Mr. Boone") (Black male), Regional Vice President of BBB.

15.     At all times relevant, Blair McBride ("Mr. McBride)(Caucasian male), is the Chief Executive Officer, of BBB.

16.     At all times relevant, Plaintiff is a member of a protected class pursuant to Title VII based on her race, Black/African American female.

17.     At all times relevant, Defendant was aware of Plaintiff's race upon hire as she interviewed for the job in person and/or by video, and her race is visibly apparent by sight.

18.     Immediately upon hire with Defendant, Plaintiff was subjected to disparate treatment, and a hostile and harassing work environment based on race by her immediate supervisor Ms. Cardone.

19.     Starting on or about November 2020 and continuing until Plaintiff's wrongful termination she was subjected to unequal terms and conditions of employment, discrimination based on her race, disparate treatment, a hostile and harassing work environment, and retaliation by her immediate supervisor Ms. Cardone.

20.     On or about November 6, 2023, Plaintiff filed a charge of discrimination against Ms. Cardone and BBB with the Charolotte, N.C. District office of the EEOC alleging discrimination based on race and disparate treatment. The case was docketed at case number 430-2024-00481.

3

21. On or about November 15, 2023, The Charolotte, N.C. District Office issued Plaintiff a Determination and Notice of Rights letter in her initial discrimination case. Plaintiff did not pursue her rights to sue in that case..

22. After Plaintiff received her DNR in the November 6, 2023 Charge of Discrimination, Ms. Cardone and BBB, Ms. Cardone began to engage in a pattern of severe and pervasive hostile, harassing, and retaliatory conduct against Plaintiff.

23. On or about mid-November 2023, Ms. Cardone denied Plaintiff request to attend a development/training conference in Chicago, Ill. In late November 2023, Plaintiff was told by Mr. Boone that Ms. Cardone changed her mind about Plaintiff's training and development request, after Plaintiff complained about being denied training, but decided to send Plaintiff for training at a less qualified and less experienced BBB partner city.

24. In late November/December 2023, Ms. Cardone disparaged Plaintiff's work directly her primary client Charolette Center City Partners ("CCCP").

25. Specifically, Ms. Cardone falsely stated to CCCP partners that Plaintiff was failing to adhere to BBB's recruiting and onboarding practices and that she "could not guarantee the success of the location under [Plaintiff's]" leadership" and recommended to CCP that Plaint'ff be removed from her position.

26. In late November 2023, Plaintiff complained to CCCP leadership in a meeting the she was being discriminated on based on her race, and being subjected to a hostile and harassing work environment by Ms. Cardone. Plaintiff levied her complaint about the unlawful conduct in the meeting to Dr. Philip Otienoburu ("Dr. Otienoburu"), Senior Vice President of Community Development for CCCP; Jaletha Jarett, CCCP Community Director; Allison Mills, CCCP Community Manager; and Courtney, CCCP Southend Community Manager.

4

27.     After Plaintiff complained to CCCP leadership about the unlawful discrimination, Ms. Cardone directed Mr. Boone to place Plaintiff on the unwarranted PIP.

28.     Five (5) days after the EEOC issued Plaintiff her DNR letter, Ms. Cardone, retaliated against Plaintiff by directing Mr. Boone to place Plaintiff on a Performance Improvement Plant ("PIP").

29.     Upon issuing Plaintiff the PIP, Mr. Boone stated to Plaintiff he knows any and all of the issues in the PIP that existed had already been fixed and/or addressed earlier in the year, but he had no other choice to issue PIP because Ms. Cardone had directed him to do so.

30.     The PIP issued to Plaintiff was vague, ambiguous, and wholly subjective stating things like needs improvement with customer service for allegedly making little or no eye contact with people; inconsistency with following company training policy, when Ms. Cardone denied all of Plaintiff's requests for training; allegedly failing to spend 80% of my management time in the field; SMART system metrics not meeting company standards (without providing Plaintiff with what those metrices are); and allegedly not meeting the agreed upon "deployment" of a static post on Trade and Tyrone streets.

31.     Upon information and belief, Plaintiff asserts all of these performance issues, were either false or issues that Plaintiff had already addressed and corrected earlier in the year with Mr. Boone.

32.     Upon information and belief, even if the performance deficiencies in the PIP were true, and they were not, Ms. Cardone provided Plaintiff with an unreasonable amount of time – 10 days – to cure and correct the alleged performance deficiencies.

33.     After being issued the PIP in November, during a meeting with several CCCP witnesses, including Dr. Otienoburu , Plaintiff stated to them that she was being subjected to

5

discrimination based on her race, harassment and a hostile work environment, and retaliated against for filing her prior EEOC complaint.

34. Dr. Otienoburu complained to Mr. Boone and Ms. Cardone the same day the PIP was issued to Plaintiff that he disagreed with the PIP, and the unrealistic timeline Plaintiff was given to cure and correct the alleged deficiencies in the PIP.

35. Dr. Otienoburo stated directly to Plaintiff that Ms. Cardone was "clearly targeting her."

36. On December 1, 2023, ten (10) days after Ms. Cardone directed Mr. Boone to issue Plaintiff the PIP, Mr. Boone terminated Plaintiff's employment offering Plaintiff a $8,300.00 severance package stating she "voluntarily resigned."

37. When CCCP CEO Michael Smith ("Mr. Smith") learned Plaintiff was being terminated, he reached out to Plaintiff and suggest and suggested Plaintiff engage in severance negotiations with BBB.

38. On or about December 7, 2023, Plaintiff countered BBB's severance offer with an offer of $45,000.00.

39. On or about December 13, 2024, BBB re-countered Plaintiff's counter offer with $28,000.00.

40. On December 18, 2023, Plaintiff contacted Mr. Boone and requested changes to the enclosed Non-Disclosure Agreement and Severance language.

41. On or about January 2, 2024, Mr. Boone sent Plaintiff a revised NDA with Plaintiff's requested changes, but none of the changes had been made to the severance agreement including that statement that said Plaintiff had "voluntarily resigned."

6

42.     On January 8, 2024, Plaintiff inquired with Mr. Boone about being paid severance in one lump-sum payment because the severance agreement did not specify the method of payment. Plaintiff requested that Mr. Boone follow up with her by January 12, 2024, or she would be returning to work since she had never been issued a formal termination letter, and no severance agreement had been reached.

43.     Mr. Boone refused to let Plaintiff return to work, but still never issued her a formal termination letter.

44.     By January 29, 2024, after BBB had failed to respond to Plaintiff's January 8, 2024 request, Plaintiff called BBB CEO McBride, who informed Plaintiff that the severance offer had been withdrawn.

## Facts Relevant to Plaintiff's Prior EEOC Complaint

45.     On or about March 2021, Ms. Cardone began to subject Plaintiff to disparate treatment and hostile and harassing work environment based on her race after Plaintiff went above Ms. Cardone's authority and requested a raise from CEO McBride.

46.     Plaintiff's original starting salary was $65,000.00 per year.

47.     Plaintiff was the only Operations Manager with BBB who was required to cover two (2) bids (regional areas, while other operation managers were only covering one (1) bid. Plaintiff was performing significantly more work than other operations managers, for the same pay.

48.     On or about March 2021, Plaintiff negotiated directly with CEO McBride and Scott Crandall, BBB Regional Vice President, via Zoom to increase her salary to $85,000.00 per year to be effective April 1, 2023.

7

49.     As of August 1, 2023, Plaintiff had still not received the agreed upon salary increase, and Ms. Cardone informed Plaintiff that she would not be receiving a pay increase to $85,000.00 as agreed, but only to $80,000.00, and BBB would not be making the increase retroactive to April 1, 2023. BBB refuse to say why it would not make the salary increase retroactive, despite Plaintiff successfully performing all the duties of covering two (2) bid since her hire on February 3, 2020.

50.     Plaintiff was significantly more qualified than the other operation managers, but being paid the same salary, for doing more work.

51.     Plaintiff directly complained to Ms. Cardone in August 2021 that she believed she was being discriminated against based on her race and being subject to disparate treatment based on the denial of the agreed upon salary increase.

52.     After complaining to Ms. Cardone about the discrimination and disparate treatment in August 2021, Ms. Cardone began subjecting Plaintiff to a hostile, harassing, and retaliatory work environment.

53.     Specifically, on or about August 2021, Ms. Cardone begins to over-scrutinize Plaintiff's work; falsely accuses Plaintiff of performance deficiencies, criticizes her work, and singles Plaintiff out for issues in the workplace, despite Plaintiff receiving accolades from her clients, specifically, CCCP leadership.

54.     On or about late September or early October 2021, after Plaintiff stood up and/or challenged Ms. Cardone about the training and development of another employee, Kamille, Ms. Cardone's hostile and harassing behavior toward Plaintiff escalated.

55.     In October 2021, after seeing the disparate treatment Plaintiff was being subjected to, Ashley Cannon, Plaintiff's BBB manager, told Plaintiff to watch her back because Ms.

Cardone had a history of targeting and discriminating against "strong Black women" and stated: "[Plaintiff] had earned a permanent spot on 'Carin's list'." Ms. Cannon stated that Ms. Cardone had a history of prejudice and discrimination again Black women who spoke up for themselves.

56. In April 2022, Ms. Cardone falsely accused Plaintiff of not following BBB recruiting procedures.

57. In January 2023, Ms. Cardone denied Plaintiff's request for training and to participate in budget conversations that directly affected her ability to perform the duties of her job and service her clients.

58. Throughout 2023, Ms. Cardone, without cause or reason, subjected Plaintiff to six (6) audits in five (5) months. No other non-black operations managers were subjected to this many audits, or any audits at all,

59. In January/February 2023, drastically cut Plaintiff's operations budget--drastically more than the budgets of the non-black operations manager—despite Plaintiff's budget needed to cover two (2) bid areas.

60. In May 2023, Human Resources Director Ruth Dyke instructed Plaintiff to issue a Letter of Counseling ("LOC") based on hearsay and lack of evidence. When Plaintiff declined to served the LC on the employee because it was ethically and morally wrong, Ms. Dyke threatened to report Plaintiff to Ms. Cardone as insubordinate and discipline Plaintiff. Plaintiff, under duress, served the employee with the LOC.

61. On or about May 2023, Ms. Cardone slashed Plaintiff's annual bonus in half without reason or cause. To Plaintiff's information and belief, no other non-black operations managers had their bonuses cut.

62.     On or about July 2023, Mr. Boone informed Plaintiff that Ms. Cardone had instructed him to place Plaintiff on a PIP based on false performance deficiencies. Ms. Boone did not actually issue the PIP until November 20, 2023.

63.     On November 6, 2023, based on the above cumulative actions of Ms. Cardone, Plaintiff filed a Form 5 Charge of Discrimination against BBB with the Charlotte, N.C. EEOC office, docketed as 430-2024-00481.

64.     On or about November 15, 2023, the EEOC issued Plaintiff her Determination and Notice of Rights. **Exhibit B: 11/15/2023 DNR.**

65.     On November 20, 2023, Mr. Boone, at the direction of Ms. Cardone issued the unwarranted PIP based on false performance deficiencies, providing Plaintiff only 10 days to cure and correct the alleged deficiencies.

66.     On December 1, 2023, Mr. Boone verbally terminated Plaintiff at Ms. Cardone's direction. Plaintiff requested that she be allowed a witness to be present during the termination meeting and Mr. Boone refused. Mr. Boone presented me with a severance letter and severance agreement that falsely stating that I had "voluntarily resigned", and demanded Plaintiff sign the severance agreement immediately. Plaintiff declined, and walked out.

67.     After being terminated Plaintiff received several calls from co-workers, including Michael , Rashaan, Rick, Moria, and several others, who informed Plaintiff that Mr. Boone was reporting to them that I quit. Plaintiff informed her co-workers that Mr. Boone had terminated her without cause and she would be contacting an attorney. It should be noted that neither Mr. Boone or anyone else at BBB issued Plaintiff a termination letter.

68.     Plaintiff reached out to CCCP CEO Michael Smith who suggested that I negotiate a fair severance package and stated the BBB had handled the entire situation badly.

10

69.     On or about mid-December, Plaintiff countered the initial severance offer with a $45,000.00 counter offer, which included payment of medical bills and back pay, but did not mention she believed my termination was based on discrimination, harassment, or retaliation for my filing my previous EEOC complaint, because she did not want a long fight because she could not afford the legal battle and felt that she lacked the mental capacity to fight due to the sever and pervasive discrimination, harassment, and hostile work environment she had been subjected to by Mr. Cardone over the last year. On or about December 13, 2024, BBB re-countered Plaintiff's counter offer with $28,000.00.

70.     On or about January 8, 2024, Plaintiff reached out to Mr. Boone and requested a lump-sum payment of severance, and reminded him that she had not been issued a termination letter, and had not voluntarily resigned and stated she would be returning to work, if she did not received a timely response to her severance counteroffer by January 12, 2024.

71.     On or about January 29, 2024, after received no response to her severance counteroffer from Mr. Boone, Plaintiff reached out to CEO McBride who informed me that the severance offer had expired.

72.     As a direct and proximate result of Defendant's unlawful conduct, which was willful, intentional, and malicious, to terminate Plaintiff's employment, Plaintiff suffered and continues to suffer loss of earnings and other employment benefits.

73.     As a direct and proximate result of Defendant's unlawful conduct for her unlawful termination, Plaintiff is entitled to actual (compensatory) damages in the form of lost wages and other benefit.

74. As a direct and proximate result of Defendant's unlawful actions, which were willful, intentional, and malicious, Plaintiff is entitled damages in the form of front pay, back pay, and lost benefits.

75. At all times relevant to the claims herein, Plaintiff has suffered stress and anxiety as a direct and proximate result of BBB's unlawful conduct.

76. As a direct and proximate result of BBB's unlawful conduct that damaged Plaintiff's mental health and well-being, Plaintiff is entitled to damages for emotional distress.

77. Because Defendant's unlawful actions were willful, intentional, and malicious Plaintiff is entitled to punitive damages.

## CAUSES OF ACTIONS

### COUNT 1
**(Discrimination on the Basis of Race)**
*42 U.S.C. § 2000(e), et seq*

78. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

79. Plaintiff is an Black/African-American female, and thus a member of a protected class under Title VI.

80. Plaintiff was subjected to an adverse employment actions on November 20, 2023 when she was placed on a PIP and when she was ultimately terminated on December 1, 2023.

81. At all times relevant, similarly-situated employees outside Plaintiff's protected classes treated more favorably than Plaintiff.

82. Specifically, Plaintiff was treated less favorably than non-black operations manager; when Ms. Cardone required her to perform more work for the same pay as other non-black operations managers; when Ms. Cardone overcriticized her work; when Ms. Cardone subjected her to six (6) audits in five (5) months; when Ms. Cardone denied her training and

12

development opportunities granted to other non-black operations managers; when Ms. Cardone slashed her operations budget more than other non-black operations managers who only covered one (1) bid; when Ms. Cardone cut her annual bonus in half, but did not slash other non-black operations managers bonuses; when Ms. Cardone directed Mr. Boone to place her on an unwarranted and unsubstantiated PIP; and when Ms. Cardone directed Mr. Boone to terminate her, without cause.

83.     Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices against her which are not yet fully known. At such time as such discriminatory practices become know, Plaintiff will seek leave of Court to amend this Complaint in that regard.

84.     As a direct and proximate result of Defendant's unlawful conduct, which was willful, intentional, and malicious, to terminate Plaintiff's employment, Plaintiff suffered and continues to suffer loss of earnings and other employment benefits.

85.     As a direct and proximate result of Defendant's unlawful conduct for her unlawful termination, Plaintiff is entitled to actual (compensatory) damages in the form of lost wages and other benefit.

86.     As a direct and proximate result of Defendant's unlawful actions, which were willful, intentional, and malicious, Plaintiff is entitled to front pay, back pay, and lost benefits.

87.     At all times relevant to the claims herein, Plaintiff has suffered humiliation and emotional distress in the form of stress and anxiety as a direct and proximate result of BBB's unlawful conduct.

88.     As a direct and proximate result of BBB's unlawful conduct that damaged Plaintiff's mental health and well-being, Plaintiff is entitled to damages for emotional distress.

13

89.     As a direct and proximate result of Defendant's unlawful actions, which were willful, intentional, and malicious, Plaintiff is entitled to punitive damages.

## COUNT 2
### (Hostile Work Environment)
*42 U.S.C. § 2000e, et seq.*

90.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

91.     Plaintiff is an Black/African-American female, and thus a member of a protected class under Title VI.

92.     Plaintiff was subjected to a hostile work environment when she was subjected to an adverse employment actions on November 20, 2023, when she was placed on a PIP; and on December 1, 2023, when BBB terminated her employment.

93.     At all times relevant, similarly-situated employees outside Plaintiff's protected classes treated more favorably than Plaintiff.

94.     Specifically, Plaintiff was treated less favorably than non-black operations manager; when Ms. Cardone required her to perform more work for the same pay as other non-black operations managers; when Ms. Cardone overcriticized her work; when Ms. Cardone subjected her to six (6) audits in five (5) months; when Ms. Cardone denied her training and development opportunities granted to other non-black operations managers; when Ms. Cardone slashed her operations budget more than other non-black operations managers who only covered one (1) bid; when Ms. Cardone cut her annual bonus in half, but did not slash other non-black operations managers bonuses; when Ms. Cardone directed Mr. Boone to place her on an unwarranted and unsubstantiated PIP; and when Ms. Cardone directed Mr. Boone to terminate her without cause.

14

95.     Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant Target may have engaged in other discriminatory practices against her which are not yet fully known. At such time as such discriminatory practices become know, Plaintiff will seek leave of Court to amend this Complaint in that regard.

96.     As a direct and proximate result of Defendant's unlawful conduct, which was willful, intentional, and malicious, to terminate Plaintiff's employment, Plaintiff suffered and continues to suffer loss of earnings and other employment benefits.

97.     As a direct and proximate result of Defendant's unlawful conduct for her unlawful termination, Plaintiff is entitled to actual (compensatory) damages in the form of lost wages and other benefit.

98.     As a direct and proximate result of Defendant's unlawful actions, which were willful, intentional, and malicious, Plaintiff is entitled to front pay, back pay, and lost benefits.

99.     At all times relevant to the claims herein, Plaintiff has suffered humiliation and emotional distress in the form of stress and anxiety as a direct and proximate result of BBB's unlawful conduct.

100.    As a direct and proximate result of BBB's unlawful conduct that damaged Plaintiff's mental health and well-being, Plaintiff is entitled to damages for emotional distress.

101.    As a direct and proximate result of Defendant's unlawful actions, which were willful, intentional, and malicious, Plaintiff is entitled to punitive damages.

## COUNT 3
### (Retaliation)
*42 U.S.C. § 2000(e)*

102.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

103.    Plaintiff is a member of a protected class (Black/African American) female.

15

104. On or about November 6, 2023, Plaintiff engaged in protected activity when she filed a Form 5 Charge of Discrimination against BBB with the Charlotte, N.C. EEOC office, docketed as 430-2024-00481.On or about November 15, 2023, the EEOC issued Plaintiff her Determination and Notice of Rights. **Exhibit B: 11/15/2023 DNR.**

105. BBB retaliated against Plaintiff when on November 20, 2023, Mr. Boone, at the direction of Ms. Cardone issued the unwarranted PIP based on false performance deficiencies, providing Plaintiff only 10 days to cure and correct the alleged deficiencies.

106. BBB retaliated against Plaintiff when on December 1, 2023, Mr. Boone verbally terminated Plaintiff at Ms. Cardone's direction.

107. BBB retaliated against Plaintiff when on January 29, 2024, it bad faith withdrew from severance negotiations and failed to pay Plaintiff any severance.

108. BBB retaliated against Plaintiff when in February 2024, it challenged her filing for Unemployment Insurance.

109. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices against her which are not yet fully known. At such time as such discriminatory practices become know, Plaintiff will seek leave of Court to amend this Complaint in that regard.

110. As a direct and proximate result of Defendant's unlawful conduct, which was willful, intentional, and malicious, to terminate Plaintiff's employment, Plaintiff suffered and continues to suffer loss of earnings and other employment benefits.

111. As a direct and proximate result of Defendant's unlawful conduct for her unlawful termination, Plaintiff is entitled to actual (compensatory) damages in the form of lost wages and other benefit.

112. As a direct and proximate result of Defendant's unlawful actions, which were willful, intentional, and malicious, Plaintiff is entitled to damages in the form of front pay, back pay, and lost benefits.

113. At all times relevant to the claims herein, Plaintiff has suffered humiliation and emotional distress in the form of stress and anxiety as a direct and proximate result of BBB's unlawful conduct.

114. As a direct and proximate result of BBB's unlawful conduct that damaged Plaintiff's mental health and well-being, Plaintiff is entitled to damages for emotional distress.

115. As a direct and proximate result of Defendant's unlawful actions, which were willful, intentional, and malicious, Plaintiff is entitled to punitive damages.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury and that Defendant be summoned to appear in this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests a trial by jury and that Defendant be summoned to appear in this action, and that after trial by jury, a judgment be entered granting Plaintiff the following relief:

a. Violation of her rights under Title VII of the Civil Rights Act of 1964;

b. Compensatory damages including lost wages, past and future and/or impairment of power to earn money; physical pain, emotional distress and humiliations, past and future.

c. Punitive damages to punish Defendant for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct;

17

d. A permanent injunction against future acts of discrimination, harassment, retaliation, hostile work environment, and disparate treatment against Plaintiff by BBB;

e. Trial by jury on all triable issues;

f. Cost expended herein, including reasonable attorney fees;

g. Pre-judgment and post judgment interest;

h. Equal Employment Opportunity training for Defendant and all its supervisors; and

i. Any and all other relief as this Honorable Court deems just and proper.

Date: April 22, 2024

Respectfully submitted,

_____ /s/ _____

Eleisha Brewster
4934 Greenbrook Drive
Charolotte, N.C. 28205
Tele: (704) 492-8807
Email: eleishabrewster34@gmail.com
*Plaintiff, In Pro Se*

18



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Charlotte District Office**

129 West Trade Street, Suite 400
Charlotte, NC  28202
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Direct Dial: (980) 296-1250
FAX (704) 954-6410
Website: www.eeoc.gov

March 25, 2024

Eleisha Brewster
4934 Greenbrook Drive
Charlotte, NC 28205
eleishabrewster34@gmail.com

RE:  Eleisha Brewster v. Block by Block
     EEOC Charge No.: 430-2024-01714

Dear Ms. Brewster:

This letter is in response to your email correspondence dated March 5, 2024, wherein you
requested reconsideration of the Determination and Notice of Rights letter issued to you on
February 27, 2024, in the employment discrimination complaint that you filed against Block by
Block, located in Charlotte, NC (EEOC Charge No.: 430-2024-01714).

Your charge was formalized by our Charlotte District Office on February 16, 2024.  Upon
completion of the charge processing, we issued a Determination and Notice of Rights letter on
February 27, 2024.  The Determination and Notice of Rights letter informed you of the dismissal
of your charge and your right to pursue this matter under federal law in federal or state court.
The Determination and Notice of Rights letter also informed you that the lawsuit must be filed
within 90 days of your receipt of the Notice or the right to sue based on the charge will be lost.
Please note, a reconsideration request *does not stay or extend* your 90-day suit rights.

After carefully reviewing the evidence gathered during the investigation of this matter, I do not
find support for reconsideration of the Determination and your request for reconsideration is
denied.

We understand that the parties to a charge often have firm views that the available evidence
supports their respective positions.  However, the EEOC is an impartial law enforcement agency
that must issue determinations based on our interpretations of the relevant evidence and the laws
we enforce.

Sincerely,

*Elizabeth A. Rader*

Elizabeth Rader
District Director

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

Original

FILED
DATE: May 17, 2024
TIME: 2:19:30 PM
MECKLENBURG COUNTY
CLERK OF SUPERIOR COURT
BY: A. Harper

**STATE OF NORTH CAROLINA**

_____ County

*File No.* 24CV022528-590

In The General Court Of Justice
District Court Division

*Name And Address Of Plaintiff 1*

Eleisha Brewster
4931 GREENBROOK DR Charlotte NC 28205

*Name And Address Of Plaintiff 2*

## DOMESTIC
## CIVIL ACTION COVER SHEET

☑ **INITIAL FILING**   ☐ **SUBSEQUENT FILING**

Rule 5(b), Rules of Practice For Superior and District Courts

| **VERSUS** |
|---|

*Name Of Defendant 1*

Block by Block

*Summons Submitted* ☐ Yes ☑ No

*Name Of Defendant 2*

*Summons Submitted* ☐ Yes ☐ No

*Counsel for*
☐ All Plaintiffs   ☐ All Defendants   ☐ Only (List party(ies) represented)

Jury Demanded In Pleading?   ☐ No   ☐ Yes

*Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)*

*Telephone No.* | *Cellular Telephone No.*

*NC Attorney Bar No.* | *Attorney E-Mail Address*

☐ Initial Appearance in Case   ☐ Change of Address

*Name Of Firm*

*FAX No.*

| **TYPE OF PLEADING** | **CLAIMS FOR RELIEF** |
|---|---|
| *(check all that apply)* | *(check all that apply)* |
| ☐ Amended Answer/Reply (AMND-Response) | ☐ Alimony (ALIM) |
| ☐ Amended Complaint (AMND) | ☐ Annulment (ANUL) |
| ☐ Answer/Reply (ANSW-Response) | ☐ Child Support (CSUP) |
| ☐ Complaint (COMP) | ☐ Custody (CUST) |
| ☐ Confession Of Judgment (CNFJ) | ☐ Divorce (DIVR) |
| ☐ Contempt (CNTP) | ☐ Divorce From Bed And Board (DIVB) |
| ☐ Continue (CNTN) | ☐ Domestic Violence (DOME) |
| ☐ Compel (CMPL) | ☐ Equitable Distribution (EQUD) |
| ☐ Counterclaim vs. (CTCL) *Assess Counterclaim Costs* | ☐ Medical Coverage (MEDC) |
| ☐ Extend Time For An Answer (MEOT-Response) | ☐ Paternity (PATR) |
| ☐ Modification Of Alimony (MALI) | ☐ Possession Of Personal Property (POPP) |
| ☐ Modification Of Custody (MCUS) | ☐ Post Separation Support (PSSU) |
| ☐ Modification Of Support in non-IV-D cases (MSUP) | ☐ Reimbursement For Public Assistance (RPPA) |
| ☐ Modification Of Visitation (MVIS) | ☐ Visitation (VIST) |
| ☐ Rule 12 Motion In Lieu Of Answer (MDLA) | ☐ Other: *(specify and list separately)* |
| ☐ Sanctions (SANC) | |
| ☐ Show Cause (SHOW) | |
| ☐ Transfer (TRFR) | |
| ☐ Vacate/Modify Judgment or Order (VCMD) | |
| ☐ Other (OTHR): | |

*Date*

*Signature Of Attorney/Party*

NOTE: *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include a Domestic (AOC-CV-750), Motions (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

AOC-CV-750, Rev. 1/14
© 2014 Administrative Office of the Courts